# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:  HAROLD EDMONDSON and                                     No. 13-06-11422 MA
BERNADETTE EDMONDSON,

Debtors.

## **MEMORANDUM**

The limited issue before the Court is how "projected disposable income" for purposes of confirming a chapter 13 plan is to be calculated for above-median income debtors under the provisions enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  At the final hearing on confirmation, the Court requested that the parties submit briefs on the issue of whether projected disposable income is determined based solely on the Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Form B22C), or whether it is appropriate to consider Debtors' Schedules I and J in making such calculation.[1]   Because the Court has not conducted an evidentiary hearing on confirmation, the Court limits its determination to this question of law.

Debtors assert that Form B22C should serve only as the starting point for determining projected disposable income and the consequent payment to unsecured creditors under a confirmable plan.  Creditors MBNA America Bank, N.A. ("MBNA") and eCAST Settlement Corporation, assignee of MBNA America Bank N.A. ("eCAST") assert that the appropriate methodology for calculating projected disposable income for above-median income debtors is to take the forward-looking income from Schedule I, and subtract the lesser amount of the debtor's

---

[1]The parties agreed to defer other objections to confirmation concerning Debtors' expenses which could affect the amount of the required plan payment pending the outcome of the Court's determination regarding the methodology for computing "projected disposable income."

actual expenses reflected on Schedule J or the standardized expenses permitted under the IRS Standards as calculated on Form B22C. The Chapter 13 Trustee acknowledges that there are different approaches to the calculation of projected disposable income for above-median income debtors, and requests the Court to choose either strict adherence to Form B22C, or use of Schedules I and J in conjunction with Form B22C, as long as the methodology and its application are consistent. Upon review of the briefs submitted by counsel and the relevant case law in light of the applicable code sections, and being otherwise sufficiently informed, the Court finds that above-median income debtors are restricted to the expenses proscribed by the IRS Standards as reported on Form B22C, but that in computing the income side of the "projected disposable income" calculus, it is appropriate to consider a debtor's actual income as reported on Schedule I.

## DISCUSSION

Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code on August 18, 2006. Debtors's income is above the median income for a family of their size in this district. Since filing their petition, Debtors have amended their Schedules I and J and Form B22C. Nevertheless, based on Debtors' Schedules I as compared to Form B22C, it is apparent that Debtors earned significantly more income in the six months preceding the filing of their bankruptcy petition than they now earn. But gross income comprises only one side of the disposable income calculus. The other side, of course, consists of expenses. The question before the Court is how to calculate "projected disposable income" (income less expenses) required to be contributed over the life of the plan for above-median income debtors in light of the new requirements enacted as part of BAPCPA.

"Projected disposable income" implicates several sections of the Bankruptcy Code. Pursuant to 11 U.S.C. § 1325(b)(1)(B), the plan must

provide[ ] that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

"Disposable income" is defined in 11 U.S.C. § 1325(b)(1)(B)(2) as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . . for the maintenance or support of the debtor or a dependent of the debtor . . . " 11 U.S.C. § 1325(b)(1)(B)(2).    Pursuant to 11 U.S.C. § 101(10A),

> The term "current monthly income" --
> (A) means the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on --
> (I) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor . . . .
> 11 U.S.C. § 101(10A).

In other words, "current monthly income" is a snapshot of a debtor's income for the six-month period prior to the filing of his or her bankruptcy petition.  It is a misnomer inasmuch as it reports a debtor's average historical income which may or may not be reflective of a debtor's actual current monthly income on the petition date.  *See In re Girodes,* 350 B.R. 31, 36 (Bankr.M.D.N.C. 2006) ("CMI is based on a historical average and may or may not reflect the financial condition of the debtor at the time of filing.").

For above-median income debtors, "amounts reasonably necessary to be expended" are to be determined in accordance with subparagraphs (A) and (B) of 11 U.S.C. § 707(b)(2).  11 U.S.C. § 1325(b)(3).  Those subsections limit the debtor's reasonable and necessary expenses to

the categories and amounts specified therein, including those expenses contained in the National and Local Standards established by the Internal Revenue Service, and to the debtor's actual expenses in the categories specified by the Internal Revenue Service as Other Necessary Expenses. 11 U.S.C. § 707(b)(2)(A).[2]   Finally, Form B22C is the Official Bankruptcy Form used by chapter 13 debtors in reporting their current monthly income calculations.

In construing these code sections to determine how projected disposable income is to be calculated for above-median income debtors, courts have focused on whether "projected disposable income" is, in fact, the equivalent of "disposable income."  *See, e.g., In re Teixeira,* ___ B.R. ___, 2006 WL 3780539 *1 (Bankr.D.N.H. 2006) ("The issue before the Court is whether the 'disposable income' figure resulting from section 1325(b)(2)'s formula is also the Debtor's 'projected disposable income' that she is required to pay under section 1325(b)(1)(B)."); *In re Slusher,* ___ B.R. ___, 2007 WL 118009 *1 (Bankr.D.Nev. 2007) (positing the issue as "whether 'projected disposable income' as used in Section 1325(b)(1)(B) is the same as 'disposable income' as defined in Section 1325(b)(2) and (3) for an above-median income debtor").  Two lines of reasoning have emerged.

In *In re Jass,* 340 B.R. 411 (Bankr.D.Utah 2006) and *In re Hardacre,* 338 B.R. 718 (Bankr.N.D.Tex. 2006), the courts reasoned that "projected disposable income" is different than "disposable income" and must necessarily refer to income the debtor expects to receive over the life of the plan, rather than the historical average income.  *Jass,* 340 B.R. at 416 (finding that

---

[2]Subsection (B) provides that the debtor may deviate from the standardized expenses by "demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i).

4

Congress' use of the word "projected" in § 1325(b)(1)(B) "requires the Court to consider both future and historical finances of a debtor in determine compliance with § 1325(b)(1)(B)."); *Hardacre,* 338 B.R. at 723 (finding that 1325(b)(1)(B)'s reference to projected disposable income "to be received in the applicable commitment period" "suggests that Congress intended to refer to the income actually to be received by the debtor during the commitment period, rather than the prepetition average income."). Consequently, for courts following *Jass* and *Hardacre,* Form B22C is not determinative of a debtor's projected disposable income. *Jass,* 340 B.R. at 418 (concluding that the court should "will presume that the number resulting from Form B22C is the debtor's 'projected disposable income' unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future."). Under this view, it is appropriate for the Court to consider a debtor's actual income and expenses as reported on Schedules I and J in order to determine "projected disposable income."

Other Courts reject this line of reasoning, finding that "projected disposable income" is the equivalent of "disposable income" derived from Form B22C and that it is not permissible under BAPCPA for the Court to consult Schedules I and J in an attempt to determine the projected disposable income of an above-median income debtor for purposes of calculating such debtor's required plan payment. *See, e.g., In re Hanks,* ___ B.R. ___, 2007 WL 60812 (Bankr.D.Utah 2007); *In re Alexander,* 344 B.R. 742 (Bankr.E.D.N.C. 2006); *In re Barr,* 341 B.R. 181, 185 (Bankr.M.D.N.C. 2006) ("it appears that Congress intended to adopt a specific test to be rigidly applied . . . . [so that] [c]alculating 'disposable income' for above-median-income debtors under new section 1325(b) is now separated from a review of Schedules I and J . . ."); *In*

5

*re Miller,* ___ B.R.___, 2007 WL 128790 *10 (Bankr.N.D.Ala. 2007) (holding that "form B22C is dispositive with respect to an above-median debtor's 'projected disposable income.'"). *See also, In re Rotunda,* 349 B.R. 324 (Bankr.N.D.N.Y. 2006) (confirming plan proposed by an above-median income debtor who proposed to pay the amount based on current monthly income as reported on Form B22C which excludes social security benefits that were otherwise reported as income on Schedule J). In *Alexander*, the court concluded that Form B22C is dispositive of projected disposable income: "one simply takes the calculation mandated by § 1325(b)(2) and does the math." *Alexander,* 344 B.R. at 749. In *Hanks,* the Court disagreed with those courts which reason that "projected disposable income" must mean something different than "disposable income," finding that the distinction places too much weight on the term "projected" contained in 11 U.S.C. § 1325(b)(1)(B). *Hanks,* 2007 WL 60812 at * 3 and *4. *Accord Alexander,* 344 B.R. at 752 (finding that, in interpreting the statute, courts should not "preserve the past by seizing on isolated words such as . . . 'projected' and inflating their meaning beyond justification."). The *Hanks* court concluded that "[i]n 'projecting' a return to general unsecured creditors under the BAPCPA for above-median debtors, this Court's view is that its new function is solely to multiply the net 'disposable income' figure as calculated on Form B22C by the applicable commitment period. No more, no less." *Id.* at *4.

Hanks* and *Alexander* apply what those courts have determined is the plain meaning of the language of the statutes as amended by BAPCPA, and reject the policy arguments employed by various courts to support their conclusion that line 58 on Form B22C does not control the "projected disposable income" calculation. *Hanks,* 2007 WL 60812 at * 4. This Court respectfully disagrees with the conclusions reached by *Hanks* and *Alexander,* and agrees with the

basic premise of the majority of courts which reason that *projected* disposable income is a forward-looking concept from which it is appropriate to consider a debtor's actual income as reported on Schedule I. *See, e.g., Jass,* 340 B.R. at 415 (finding that "the word 'projected' is future oriented."); *Hardacre,* 338 B.R. at 722 (concluding that "the term 'projected' disposable income must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income."); *In re Demonica,* 345 B.R. 895, 900 (Bankr.N.D.Ill. 2006) (finding "that the term 'projected disposable income' must mean something other than the income computed on firm B22C."); *Slusher,* 2007 WL 118009 at *5 ("it is common sense that while 'disposable income' may explicitly refer to the past, 'projected disposable income' undeniably looks to the future.")(citation omitted).

      Interestingly, both the *Jass* and *Hanks* courts take a plain meaning approach to statutory construction[3] but reach opposite conclusions. Here, it appears that taking a plain meaning approach which results in strict adherence to Form B22C would be contrary to the structure and purpose of the Bankruptcy Code as a whole and would lead to absurd results. *See In re Heckathorn,* 199 B.R. 188, 195 (Bankr.N.D.Okla. 1996) (noting that "[i]t is an established canon of statutory construction and interpretation that a court need not, and indeed should not, read and apply a statute in a manner which leads to an "absurd" result-meaning a result which furthers no purpose"); *Jass,* 340 B.R. at 415 (noting that the Court's inquiry into the meaning of the statute "should end with the language of the statute unless . . . a literal application of the statutory

_____

      [3]*See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (finding that "where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms.")(internal quotation marks and citation omitted).

7

language would produce an absurd result")(citing *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Thus in construing the statute, the Court will consider the statute as a whole, and interpret it so that the Bankruptcy Code can function in a workable manner. *See United States v. Timbers of Inwood Forest, Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("Statutory construction . . . is a holistic endeavor."); *In re Lenton,* ___ B.R. ___, 2006 WL 3850011 *2 (Bankr.E.D.Pa. 2006) (noting that "when statutory construction involves two statutory provisions, it is important to have a construction that carries out Congress' goals by harmonizing both provisions, if possible.")(citing *In re Handel,* 253 B.R. 308, 311 (1ˢᵗ Cir. BAP 2000).[4] *See also, Perry v. Commerce Loan Co.,* 383 U.S. 392, 400, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966) (When the plain meaning "has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words.'") quoting *United States v. American Trucking Assns.,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

For this reason, the Court finds that "projected disposable income" must take into account the debtor's actual current income as reported on Schedule I, projected to include the

---

[4]*See also, Marrama v. Citizens Bank of Massachusetts,* ___ U.S. ___, 127 S.Ct. 1105, 1109, 2007 WL 517340 *3 and *4 (2007) (affirming bankruptcy appellate panel's determination that § 706(a) which provides that a "debtor may convert . . . at any time" "when read in connection with other provisions of the Code and the Bankruptcy Rules, as creating a right to convert a case from Chapter 7 to Chapter 13 that 'is absolute only in the absence of extreme circumstances.'" and holding that it is appropriate to deny a debtor's motion to convert under § 706 when there has been bad faith) (quoting *In re Marrama,* 313 B.R. 525, 531 (1ˢᵗ Cir. BAP 2004)).

8

actual income the debtor expects to receive over the life of the plan. Where a debtor's financial

situation has remained stable for the period leading up to the filing of the petition, the data

reported on Form B22C regarding the debtor's income over the six-month period preceding the

filing of the bankruptcy will mirror the income reported on Schedule I. But where a debtor's

financial situation has significantly deteriorated, which indeed may have precipitated the need

for the debtor to seek bankruptcy relief in the first place, it makes no sense to require that debtor

to propose a plan payment which would be impossible for the debtor to make given the debtor's

current income situation. In other words, strict adherence to Form B22C will result in absurd

and illogical results, i.e., denial of confirmation as *de facto* infeasible because a debtor's actual

income is significantly lower than that reflected on Form B22C, or, conversely, confirmation of a

plan that pays little or nothing to unsecured creditors based on the figures contained in Form

B22C despite a debtor's ability to pay more as reflected on Schedule I. *See Jass,* 340 B.R. at

417 (noting that if the court were to "hold that a debtor must always pay unsecured creditors the

number resulting from Form B22C, . . . the Court would essentially foreclose the potential for

bankruptcy relief" from those otherwise eligible debtors whose actual income is significantly

less than the historical figures contained in Form B22C). Likewise, the Court would be

required to confirm a plan where the debtor could, based on his or her current monthly income,

pay creditors more than the amount required from the calculation provided by Form B22C. The

Court, therefore, concludes that "projected disposable income" must take into account the

debtor's actual income as reported on Schedule I in order to give meaning and effect to the term

"projected" and to carry out the meaningful purpose of the Bankruptcy Code as a whole. In this

respect, the Court follows *Jass* and *Slusher* which use Form B22C as a starting presumption

9

which may be rebutted based on a debtor's actual income reported on Schedule I.  *Jass* 340 B.R.
at 418 (concluding that Form B22C constitutes a rebuttable presumption of the debtor's
"projected disposable income."); *Slusher,* 2007 WL 118009 at *2 (holding that "line 58 of Form
B22C is a presumptive, but not an exclusive, basis for calculating 'projected disposable income'
as used in U.S.C. § 1325(b)(1)(A).").  *See also, In re Casey,* 2006 WL 3071401 *3
(Bankr.E.D.Wash. 2006) (finding that Form B22C is only the starting point for determining
"projected disposable income.").

        On the expense side of the "projected disposable income" equation, above-median
income debtors are specifically restricted by 11 U.S.C. § 1325(b)(3), which limits a debtor's
reasonable expenses to the standardized expenses under the IRS Guidelines as reported on Form
B22C.   That section provides that "[a]mounts reasonably necessary to be expended under
paragraph (2) *shall* be determined . . . " 11U.S.C. § 1325(b)(3) (emphasis added).   The use of
the word "shall" makes this section mandatory.  *See Matter of DP Partners Ltd. P'ship,* 106 F.3d
667, 670-71 (5th Cir. 1997) ("Use of the word 'shall' connotes a mandatory intent.")(citation
omitted); *In re Tranmer,* 344 B.R. 234, 246 (Bankr.D.Mont. 2006) ("'The use of 'shall' in
section 1325(b)(3) is mandatory and leaves no discretion with respect to the expenses and
deductions that are to be deducted in arriving at disposable income.'") quoting *Barr,* 341 B.R. at
185.  Thus, in computing an above-median income debtor's projected disposable income, the
debtor's actual expenses as reported on Schedule J should not be used.  The projected disposable
income for above median income debtors is to be determined by using the income reported on
Form B22C, adjusted as may be required based on the debtor's actual income as reported on
Schedule J, less expenses based solely on the artificial figures contained in Form B22C, with

10

limited exceptions as provided 11 U.S.C. § 707(b)(2)(B)(i).  *See Hanks,* 2007 WL 60812 at *5

(noting that section "1325(b)(3)'s incorporation of subparagraphs (A) *and* (B) of § 707(b) does

provide courts with a very limited ability to adjust both income and expenses under §

707(b)(2)(B)(i) based on a showing of 'special circumstances, such as serious medical condition

or a call or order to active duty in the Armed Forces . . .for which there is no reasonable

alternative.'") quoting 11 U.S.C. § 707(b)(2)(B)(i).  Schedule J is irrelevant.   The result of this

mechanical approach to expenses for above-median income debtors mandated by 11 U.S.C. §

1325(b)(3) is to set a standard amount for reasonable, necessary expenses regardless of whether

the debtors' expenses are in reality higher, or lower, or spent on items other than those the

debtors are entitled to report on Form B22C.  *See In re Farrar-Johnson,* 353 B.R. 224, 230-31

(Bankr.N.D.Ill. 2006) (finding that above-median debtors were entitled to claim a housing

expense under the IRS Housing and Utility Local Standard regardless of whether they had such

expense, and rejecting cases which equate "applicable" expenses referenced in §

707(b)(2)(A)(ii)(I) with "actual" expenses, meaning that a debtor must actually incur the expense

in order to claim it as applicable under the Local Standards.)  *See also Slusher,* 2007 WL 118009

at *14 (finding that in applying the IRS' National and Local Standards as required under §

707(b)(2)(a), courts "should look to how the IRS determined those standards; that is, as to how

the IRS would have applied them in similar circumstances.").

    In this respect, the Court cannot follow the view that both Schedule I and J are relevant to

computing projected disposable income.[5]   Instead, the Court agrees with the conclusions

---

    [5] *See, e.g., In re Devilliers,* ___ B.R. ___ 2007 WL 92504 *5 (Bankr.E.D. La. 2007)
(finding that the "Court is required to consider not only a debtor's historical income and
expenses, but also his or her anticipated income and expenses when confirming a plan.");

reached by the courts in *Teixeira, Farrar-Johnson,* and *In re Fuller,* 346 B.R. 472

(Bankr.S.D.Ill. 2006).[6]  *Cf. Girodes,* 350 B.R. at 37 (acknowledging that 1325(b)(3)

"specifically defines what constitutes 'amounts reasonably necessary to be expended under

paragraph (b)(2) for an above-median debtor" and finding that for *below*-median income debtors,

expenses should be those set forth on Schedule J).  Similarly, because of the mandatory language

contained in 11 U.S.C. § 1325(b)(3), the Court must reject the approach urged by MBNA and

eCast, that is, to treat the IRS standards as a "cap" on "reasonable and necessary expenses" and

to use the expenses reported on Form B22C as a starting point, which should be reduced in the

event a debtor's actual expenses reported on Schedule J are less than the standard amounts.

In sum, the Court finds that in computing the "projected disposable income" for an

above-median income debtor, the income side of the equation begins with Form B22C and takes

into account the debtor's actual income as reported on Schedule I, while the expense side of the

---

*Rotunda,* 349 B.R. at (Bankr.N.D.N.Y. 2006) (finding that Form B22C does not end the inquiry for below-or above-median income debtors so that Schedule I and J should be used to determine "projected disposable income.").

[6]*See Teixeira,* 2006 WL 3780539 at * 2 n.6 ("The plain language of section 1325(b)(3) instructs that an above-median debtor's expenses 'shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2).' 11 U.S.C. § 1325(b)(3).  The court sees no reason to deviate from this when a debtor has experienced a change in circumstances."); *Farrar-Johnson,* 353 B.R. at 228 ("When a Chapter 13 debtor is above the median income, section 1325(b)(3) . . . makes clear that Schedule J has no role in calculating disposable income."); *Fuller,* 346 B.R. at 485 ("parties must determine 'projected disposable income' by looking at Schedule I to determine the debtor's income at the date the petition was filed.  The parties should look to Form B22C to determine which expenses to deduct –reasonable Schedule J expenses for below-median debtors, standardized expenses for above-median debtors.").  *See also, In re Guzman,* 345 B.R. 640, 642 (Bankr.E.D.Wis. 2006) (holding that "the unambiguous language of the new statute compels but one answer: the above-median debtor's expense deductions are governed by Form B22C, not by Schedule J.").

Case 06-11422-j7    Doc 40    Filed 03/01/07    Entered 03/01/07 13:41:09 Page 12 of 13

equation is restricted by the applicable expenses reported on Form B22C. The amount an above-median income debtor must contribute to the plan is determined by subtracting the standardized expenses reported on Form B22C from income reported on Form B22C, as may appropriately be adjusted up or down based on the debtor's actual anticipated income as reported on Schedule I. This memorandum constitutes the Court's conclusions of law in accordance with Rule 7052, Fed.R.Bankr.P. The Court will re-schedule a final hearing on confirmation to determine whether the Debtors' can confirm a plan that comports with the conclusions reached in this memorandum.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

COPY TO:

Kelley L. Skehen
Chapter 13 Trustee
625 Silver SE, Suite 350
Albuquerque, NM 87102

P. Diane Webb
Attorney for Debtors
PO Box 30456
Albuquerque, NM 87190-0456

James A Askew
Attorney for eCast Settlement Corporation, Assignee of MBNA America Bank, N.A.
PO Box 1888
Albuquerque, NM 87103-1888

Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103